```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

BILLY L. WEISMAN,                §
                                 §
          Plaintiff,             §
                                 §
v.                               §       CIVIL NO. H-04-1991
                                 §
STATE FARM MUTUAL                §
AUTOMOBILE INSURANCE CO.,        §
                                 §
          Defendant.             §
```

**MEMORANDUM OPINION**

Pending before the court[1] are Defendant's Motion for Partial Summary Judgment (Docket Entry No. 25) and Plaintiff's Motion to Strike Defendant's Summary Judgment Evidence (Docket Entry No. 30). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

### I.  Case Background

This insurance dispute results from an automobile accident that occurred on September 9, 2000. During the early morning hours of that day, Plaintiff was driving through Liberty, Texas, on his way back to his home after making a company delivery to Lafayette, Louisiana.[2] At the time, it was raining and the road was wet.[3]

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 22.

[2] See Defendant's Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. B, Plaintiff's Deposition, pp. 59, 60, 68, 76-77.

[3] See id. at p. 77.

Plaintiff collided with two other vehicles as they all approached a red traffic light at an intersection.[4]

Shortly after the accident, Plaintiff filed a claim with Defendant for benefits under his automobile insurance policy.[5] Defendant paid benefits under the policy's collision, rental, and personal injury protection coverage.[6] The policy also included uninsured/underinsured motorist coverage that provided benefits to an insured who was "legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person or property damage, caused by an accident."[7] A senior claim representative, Shannon Lightsey ("Lightsey"), explained by letter that Plaintiff was not eligible for uninsured/underinsured motorist benefits because Plaintiff "was the proximate cause of this accident by:  Failure To Control Speed, Failure to Keep a Proper Lookout, and Failure to Maintain a Single Lane."[8]  Lightsey informed Plaintiff that all applicable benefits had been paid and Defendant was closing Plaintiff's file.[9]

In February 2003, Plaintiff settled his lawsuit against one of

---

[4] See id. at pp. 77-78.

[5] See id. at Ex. D, letter from Defendant to Rand A. Mintzer (Plaintiff's counsel at the time) dated Feb. 13, 2001, p. 1.

[6] See id.

[7] See id.

[8] Id.

[9] Id.

the other drivers, Patricia Sackett ("Sackett"), for an amount equal to her automobile insurance policy limits.[10] He then filed another claim with Defendant for underinsured motorist coverage.[11] A different claim representative, Ann Stryker ("Stryker"), denied Plaintiff's claim because Plaintiff appeared to be at fault for the accident.[12] Upon Plaintiff's change of counsel in 2004, he filed this lawsuit, alleging breach of contract and negligence.[13]

A few days later, he contacted Defendant again about the underinsured motorist coverage.[14] Stryker responded by letter, stating:

> We completed an investigation into this loss that included inspection of the Weisman vehicle, inspection of the Sackett vehicle, written statement from Mr. [Jackie] Estep [("Estep")], who drove the third vehicle involved in the accident,] recorded statement of Mr. Weisman, a brief written statement from Ms. Sackett and the accident report. We believe our conclusion that Mr. Weisman was the proximate cause of this loss is correct based on a preponderence [sic] of the evidence.[15]

A few months later, Plaintiff amended his complaint to add claims under the Texas Insurance Code for unfair settlement practices and

---

[10] See Plaintiff's First Amended Complaint, Docket Entry No. 11, ¶ 6.

[11] Id.

[12] See Defendant's Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. E, letter from Defendant to Rand A. Mintzer dated Mar. 7, 2003.

[13] See Plaintiff's Original Complaint, Docket Entry No. 1.

[14] See Defendant's Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. F, letter from Defendant to Michael Josephson (Plaintiff's counsel), dated May 27, 2004.

[15] Id.

failure to make prompt payment of his claim.[16]  Defendant's pending motion seeks summary judgment on all of Plaintiff's extracontractual claims.

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, 337 F.3d 539, 540-41 (5th Cir. 2003).  The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence which establishes

---

[16] See Plaintiff's First Amended Complaint, Docket Entry No. 11.  The court notes that portions of the Texas Insurance Code have been recodified, effective April 1, 2005.  The former article 21.21, section 4(10), is now section 541.060 of the Texas Insurance Code and article 21.55, section 3, is now section 542.056.  For the convenience of the parties, the court refers to the former article numbers throughout this opinion.

each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial. Id. at 324.

A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Id. at 250. When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." See Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). Where the record, taken as a whole, indicates that no reasonable jury could return a verdict for the nonmoving party, there is no genuine issue for trial. Washington v. Allstate Ins. Co., 901 F.2d 1281, 1286 (5th Cir.

1990).

## III. Analysis

Before reaching Defendant's summary judgment motion, the court must address Plaintiff's motion to strike. Plaintiff seeks to strike his own 2004 deposition from the summary judgment evidence. Although the court agrees with Plaintiff that the court "must analyze the reasonableness of State Farm's conduct in denying Plaintiff's claim based on the information which was available and relied upon by State Farm at the time of its denial,"[17] it does not agree that evidence not considered by Defendant at the time of the denial of coverage should be stricken from the summary judgment record. Plaintiff's 2004 deposition is competent and is relevant to other aspects of the summary judgment analysis. Accordingly, Plaintiff's motion is denied.

Defendant seeks summary judgment on Plaintiff's claims for negligence[18] and unfair settlement practices under common and statutory law.[19] Under Texas law,[20] an insurer owes its insured a

---

[17] Plaintiff's Motion Strike Defendant's Summary Judgment Evidence, Docket Entry No. 30, p. 1.

[18] Plaintiff's complaint does not explain the precise basis for his negligence claim. The court understands the action to refer to Defendant's duty to deal fairly and in good faith in processing claims.

[19] Plaintiff's live pleading also raises statutory claims for misrepresentation of coverage under Texas Insurance Code article 21.21, section 4(10)(a)(i), and delay in payment under Texas Insurance Code article 21.21, section 4(10)(a)(v), and article 21.55. See Plaintiff's First Amended Complaint, Docket Entry No. 11, ¶¶ 15-18. Although the amended complaint contains no facts in support of these allegations, Defendant fails to address these claims (beyond seeking partial summary judgment on "all extra contractual issues"). Defendant makes no effort to inform the court of the basis for its motion on these claims or to point to relevant summary judgment evidence. Therefore, to the extent

duty to deal fairly and in good faith in processing claims. Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 459 (5th Cir. 1997)(applying Texas law). The Texas Insurance Code specifically requires an insurer "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code Ann. art. 21.21, §4(10)(a)(ii)(now Tex. Ins. Code § 541.060(a)(2)).

Whether raised pursuant to common law or the Texas Insurance Code, the insurer's duty is the same. See Higginbotham, 103 F.3d at 460. The insurer breaches this duty in denying a claim if the insurer knew or should have known that it had no reasonable basis for denying coverage. See United States Fire Ins. Co. v. Williams, 955 S.W.2d 267, 268 (Tex. 1997); Aetna Cas. & Sur. Co. v. Garza, 906 S.W.2d 543, 546 (Tex. App.–San Antonio 1995, writ dism'd by agr.). Stated differently, a bad faith claim will survive summary judgment, only if the evidence, viewed most favorably toward the insured, allows the inference that "the insurer knew or should have known that it was reasonably clear that the claim was covered."

---

Defendant is seeking summary judgment on Plaintiff's claims under the Texas Insurance Code article 21.21, section 4(10)(a)(i) and (v), and article 21.55, the motion is **DENIED**.

[20] The application of Texas law to this case is not in dispute. Cf. Tex. Ins. Code Ann. art. 21.42 ("Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby . . . .").

7

Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 56 (Tex. 1997).

Even if the insurer is wrong in denying a claim, it is not liable for bad faith if it can establish the existence of a bona fide dispute. Williams, 955 S.W.2d at 268. The reasonableness of an insurer's denial is to be judged according to the facts before the insurer at the time of its decision. Harbor Ins. Co. v. Urban Constr. Co., 990 F.2d 195, 202 (5th Cir. 1993)(applying Texas law); Viles v. Sec. Nat'l Ins. Co., 788 S.W.2d 566, 567 (Tex. 1990). However, within the insurer's duty to deal fairly and in good faith with an insured falls the obligation to "reasonably investigate a claim." Id. at 56 n.5. That is to say, if a full, unbiased investigation would have made coverage reasonably clear, the insurer should have known that there was no reasonable basis for denial and cannot avoid bad faith liability by conducting an outcome determinative investigation. See id.; State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 448 (Tex. 1997). The insurer may not base its decision on evidence that is unreliable or not objectively prepared. See Lyons v. Millers Cas. Ins. Co. of Tex., 866 S.W.2d 597, 601 (Tex. 1993).

Defendant's motion is based on the assertion that Plaintiff has not and cannot produce evidence that Defendant's liability ever became reasonably clear. That is, Defendant contends that, at most, a bona fide factual dispute existed concerning fault. Plaintiff's focus is not on the absence of a bona fide dispute, but on the presence of an allegedly biased investigation. In

particular, Plaintiff faults Defendant for denying his underinsured motorist claim without gathering additional evidence. Plaintiff's argument fails because there is no evidence that a more thorough investigation would have made Defendant's liability reasonably clear. Plaintiff points to several items of information that Defendant could have reviewed or collected, but puts forth no evidence that the information would have led to a contrary result. In order to illustrate this point, the court first looks at the evidence reviewed by Defendant and then considers the evidence Plaintiff suggests should have been reviewed.

According to Stryker, she reviewed: 1) the Report of Accident and Claim form filled out by Sackett;[21] 2) the original and revised police reports;[22] 3) the written statement of Estep;[23] 4) the original claim form and log; 5) the medical records for Plaintiff's post-accident physician visit;[24] 6) the recorded statement given by Plaintiff; and 7) the photographs of the vehicles.[25] After Stryker's 2003 claim review and before the reiteration of the denial in 2004, she also reviewed a letter from Plaintiff's

---

[21]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 29, Ex. C.

[22]   Defendant's Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. A.

[23]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 29, Ex. D.

[24]   Defendant's Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. C.

[25]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 29, Ex. A, Stryker's Deposition, pp. 27-29, 32, 39-40, 42.

physician.[26]  Nothing suggests that any of this documentation was not objectively prepared.  Some of it, including the medical records and Plaintiff's recorded statement, came from Plaintiff himself.

Stryker's decision concerning fault depended, in large measure, on whether the accident was caused by Plaintiff failing to control his speed or by Sackett stopping suddenly.[27]  Based on her review of the above evidence, Stryker determined that Plaintiff was more than fifty percent at fault for the accident.[28]  Particularly significant to Stryker were Sackett's statement that she was stopping for a red light when Plaintiff failed to do so and Plaintiff's statement to his physician that he had fallen asleep at the wheel on the day of the accident.[29]  The police reports also played a role in Stryker's decision, specifically that the police officer did not issue Sackett a citation and listed Plaintiff's failure to control his speed as the only contributing factor

---

[26]   See id. at pp. 59-61.

[27]   Cf. Defendant's Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. A, original and revised police reports (stating that Plaintiff failed to control his speed and that Sackett stopped suddenly); Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 29, Ex. A, Stryker's Deposition, p. 74 (stating that Sackett may have stopped suddenly, but Plaintiff was still responsible for controlling his speed); Ex. C, Report of Accident and Claim (stating, "I was stopping for red light and he didn't!").

[28]   See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 29, Ex. A, Stryker's Deposition, pp. 53-54, 96.  Plaintiff does not challenge Defendant's formula for determining inderinsured coverage according to an apportionment of fault.

[29]   See id. at pp. 30, 32-33; Ex. C, Sackett's Report of Accident and Claim; Defendant's Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. C, Plaintiff's medical records.

causing the accident.[30]  Stryker also noted that the damage to Sackett's vehicle was minimal and would have been more significant if she had come to a complete stop in front of Plaintiff.[31]

Although the above evidence provides a reasonable basis for Defendant's denial of Plaintiff's underinsured claim, it also reveals a bona fide dispute.  The question posed by Plaintiff is whether additional evidence would have changed the result by making Defendant's liability on the claim reasonably clear.  Plaintiff argues that Defendant should have:  1) gathered more information from and about Sackett; 2) reviewed discovery from the underlying lawsuit; 3) conducted an accident reconstruction; 4) spoken with the police officer who reported the accident and other witnesses; and 5) obtained a medical opinion regarding sleep apnea.  Plaintiff's attempt at poking holes in Defendant's investigation falls short of meeting his burden of demonstrating that Defendant should have known that liability was reasonably clear.

To begin with, Stryker may have been able to gather additional information about and from Sackett[32] and to review the lawsuit discovery.  However, there is no evidence that Sackett ever changed

---

[30]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 29, Ex. A, Stryker's Deposition, pp. 39, 73; Defendant's Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. A, revised police report.

[31]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 29, Ex. A, Stryker's Deposition, pp. 41, 80-81.

[32]   Defendant attempted to reach Sackett a number of times, but was unsuccessful.  See id. at p. 64.  So, Defendant mailed her the Report of Accident and Claim form in order to get her version of what happened in the accident.  Id.

her position on how the accident happened or that the additional evidence would have proven her version wrong.[33] Plaintiff points to evidence of Sackett's prior conviction for tampering with government records, her misrepresentation about that conviction in response to Plaintiff's interrogatories, and her departure from the accident scene before the police officer arrived. Obviously, Plaintiff feels that this evidence discredits Sackett's testimony. Nevertheless, the court finds Sackett's behavior before and after the accident to be irrelevant in the assessment of what actually happened on the day in question. Absent some evidence that specifically undermines Sackett's testimony about the accident, the court finds that Defendant's reliance on her testimony was reasonable.

As for Plaintiff's other suggestions for an improved investigation, Plaintiff has not pointed the court to any evidence that demonstrates Defendant's clear liability. For example, Plaintiff argues that Defendant should have investigated the effects of sleep apnea and challenges Defendant's reliance on Plaintiff's statement that he had fallen asleep at the wheel on the day of the accident (apparently because neither Plaintiff nor his doctor connected it precisely with the accident). On the other hand, Plaintiff produces no evidence that he did not fall asleep at the wheel immediately before the accident. It is not enough to

---

[33] For example, Sackett repeated her disagreement with Plaintiff's account in her 2002 deposition. See id. at Ex. B, Sackett's Deposition, p. 36.

challenge the inferences that Defendant drew from the evidence or its conclusions. Plaintiff must present some evidence demonstrating that liability would have been reasonably <u>clear</u> if a unbiased investigation had been conducted.

Additionally, Plaintiff gives the court no clue what it is he believes a more in depth investigation would have revealed and, certainly, points to no "smoking gun" of liability. What more would an accident reconstruction or an interview of the police officer have shown than that which was already before Stryker? All appearances are that the proposed investigation techniques likely would have produced cumulative evidence. There simply was not anything else to discover.

Importantly, even if additional evidence would have supported coverage, that fact alone does not constitute evidence of bad faith. There is no evidence of a biased investigation. Nothing indicates that Defendant pursued only one account of the accident, conducted its investigation to justify a preconceived result, or ignored evidence that Plaintiff was not at fault. Defendant simply weighed the evidence and reached a different conclusion from Plaintiff, the very essence of a bona fide dispute. All of the evidence before the court suggests nothing else. No reasonable jury could find for Plaintiff on his bad faith claims. Those claims must be dismissed.

### IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's Motion

for Partial Summary Judgment and **DENIES** Plaintiff's Motion to Strike Defendant's Summary Judgment Evidence

SIGNED in Houston, Texas, this 11th day of October, 2005.

*Nancy K. Johnson*
United States Magistrate Judge